IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALICIA HEDUM,

               Plaintiff,

     v.

STARBUCKS CORPORATION,
        a foreign business corporation,

               Defendant.

No. CV 07-0024-MO

OPINION AND ORDER

**MOSMAN, J.,**

     Plaintiff Alicia Hedum brings this employment action against her former employer, Starbucks Corporation ("Starbucks"), for religious discrimination, retaliation, workers' compensation discrimination, and wrongful discharge. Ms. Hedum, a member of the Wiccan religion, claims Starbucks subjected her to discriminatory treatment and terminated her employment because of (1) her religious practices, (2) her resistance to Starbucks's discriminatory practices, and (3) her invocation of the workers' compensation system. Starbucks claims Ms. Hedum was fired solely because of her poor attendance record, and filed for summary judgment on each of Ms. Hedum's claims. For the reasons discussed below, I find (1) Ms. Hedum has established a prima facie case on each claim; (2) Starbucks has articulated a legitimate, non-discriminatory reason for Ms. Hedum's termination; and (3) material questions of fact remain regarding whether Starbucks's legitimate reason is a pretext for discrimination. I therefore DENY Starbucks's Motion for Summary Judgment (#14) on all claims.

## BACKGROUND

     In March of 2004, Starbucks hired Ms. Hedum to work as a barista at its store in

PAGE 1 - OPINION AND ORDER

Cornelius, Oregon.  A barista's responsibilities include preparing drinks and interacting with customers; the job description also lists maintaining "regular and consistent attendance and punctuality" as a key responsibility.

During her first three months on the job, Ms. Hedum received four "corrective action notices."  She received the first three notices because she was late to her shift; she received the fourth on June 28, 2004, because she failed to show up for a shift.  As a result of the fourth notice, she was put on a 60-day "action plan," which specifically provided that any violations during that time—including any more incidents of tardiness—would lead to termination of her employment.  Ms. Hedum signed each of these notices as an acknowledgment of her violations of Starbucks's policies, and the notices were added to her personnel file.  The record suggests Ms. Hedum survived her action plan period without further incident, however, because she was transferred to Starbucks's Hillsboro Landing location sometime in August of 2004.  While at Hillsboro Landing, she reported to Anna Hickey, the store manager.

**A.  Plaintiff's Religious Necklace**

At some point during her employment at the Hillsboro Landing store, Ms. Hedum began wearing a necklace (which the parties alternately refer to as a "Wiccan cross," a "medallion," and a "pentacle") around her neck as part of her religious practice.  Ms. Hedum contends that, beginning several months into her employment at Hillsboro Landing, Ms. Hickey regularly made negative comments regarding her necklace—i.e., that it might offend customers, and on some occasions instructed her to remove or to tuck it into her shirt.[1]  Ms. Hedum also alleges that her assistant manager, Danielle Davies, told her sometime in early 2005 that (1) Ms. Hickey was offended by Ms. Hedum's necklace; (2) it would help Ms. Hedum's career if she removed the necklace; and (3) the necklace might lead people to think Ms. Hedum was a "Satan worshiper."

---

[1] Ms. Hedum cannot recall whether or not she wore the necklace while she worked at the Cornelius location.  In either case, she does not allege she was subject to discriminatory treatment there.

She further alleges that many employees, including Ms. Hickey, wore Christian cross jewelry that was as large and hung as low as her necklace, and were neither asked to remove or tuck it in nor subjected to negative comments.

Ms. Hickey testified at her deposition that she never asked Ms. Hedum to remove her necklace, but rather asked her to tuck it into her shirt, as it hung over her apron and posed a safety hazard near the store's equipment.  She also testified that she asked Ms. Hedum on several occasions to remove her tongue stud, to limit her number of earrings, and to tuck in her shirt, as required under Starbucks's dress code policy.  Ms. Hedum conceded in her deposition that Ms. Hickey asked her to remedy these latter violations, but denies Ms. Hickey ever told her the necklace was a safety hazard.  While one of her performance reviews lists "consistency in dress code" as one of her "performance improvement opportunities," she was never disciplined for any dress code violations.

In response to these comments, Ms. Hedum contacted the human resources department to investigate whether Starbucks had a policy prohibiting her from wearing her necklace, and spoke with a representative named Mary Bailey.  It is unclear when Ms. Hedum contacted Ms. Bailey, and there is little information from either party regarding the content of this conversation.  We do not know, for example, whether Ms. Hedum talked with Ms. Bailey about the nature or frequency of Ms. Hickey's comments regarding her necklace, and if so, what she told her.  According to Ms. Hedum, Ms. Bailey informed her she was permitted to wear the necklace, but if it was on a long chain extending below the top of her apron, she needed to tuck it in.

### B.  Plaintiff's Attendance Record

In addition to these disputes over Ms. Hedum's necklace, she and Ms. Hickey also had several interactions regarding her attendance record, as documented in her performance reviews and corrective action notices.  As mentioned above, Ms. Hedum received four corrective action notices while working at the Cornelius location.  Ms. Hedum received a fifth corrective action notice (her first at the Hillsboro Landing location) in early April of 2005; she received a sixth

PAGE 3 - OPINION AND ORDER

notice (her second at Hillsboro Landing) on July 26, 2005. As part of that sixth notice, she was placed on a 90-day "performance plan." The notice does not specify the meaning of this "performance plan" or whether the consequences of violating it would be as strict as those for the 60-day "action plan" she had been placed on at the Cornelius location.

Ms. Hickey completed Ms. Hedum's first performance review on September 30, 2004. In that review, Ms. Hickey noted "attendance consistency" as an area Ms. Hedum needed to improve; she gave Ms. Hedum "Satisfactory" or "Above Satisfactory" marks in all other areas. Ms. Hickey gave Ms. Hedum a nearly identical review in March of 2005.

While it is Starbucks's policy to transfer an employee's personnel file—including any corrective action notices—to any subsequent locations where the employee is transferred, the record is unclear whether Ms. Hickey ever reviewed Ms. Hedum's file or was familiar with her attendance record at the Cornelius location. It is also unclear whether Ms. Hedum displayed "attendance consistency" problems at Hillsboro Landing prior to receiving any written notices at that location. Ms. Hickey testified during her deposition that she could not recall ever consulting Ms. Hedum's personnel file from the Cornelius store, which comports with her note on Ms. Hedum's July 26, 2005 notice that Ms. Hedum would receive "written warning #3" the next time she was tardy. On the other hand, Ms. Hedum received both performance reviews—including the notations regarding her "attendance consistency"—before she received any corrective action notices at the Hillsboro Landing location.

### C. Plaintiff's On-The-Job Injury

Ms. Hedum continued to work as a barista at the Hillsboro Landing location until she was fired around August 29, 2005. The parties provide vastly different accounts of what happened during the month leading up to her termination.

#### 1. Plaintiff's Version of Events

According to Ms. Hedum, she injured her wrist during her shift on August 4, 2005, and immediately notified Marian Muff, her shift supervisor, of her injury. She also told Ms. Muff

she would be filing a workers' compensation claim, and requested the necessary paperwork to document her injury. Ms. Muff originally told Ms. Hedum she was too busy to deal with her injury, and later informed Ms. Hedum she could not locate the necessary paperwork. Ms. Hedum informed Ms. Hickey of her injury the next day, and again requested the necessary paperwork to file a workers' compensation claim. Ms. Hickey told her the store was out of the necessary paperwork, and that she would have to wait to document her injury until more forms arrived.

On August 15, Ms. Hedum told Ms. Hickey she would be missing her shift the next day because she needed to see a doctor for her wrist injury. Her doctor diagnosed her with tendonitis, placed her on a restricted work status, and scheduled a follow-up appointment for August 22. When Ms. Hedum called Ms. Hickey to inform her of her restricted work status, Ms. Hickey told her that Starbucks had no work available for her given her restrictions. Ms. Hedum responded that she would update Ms. Hickey after her August 22 appointment. In the meantime, she provided Starbucks with a medical release from her doctor specifying her injuries.

On August 22, Ms. Hedum's doctor decided to keep her on restricted work status, and Ms. Hedum called Ms. Hickey to update her on those continued restrictions. Ms. Hickey reiterated that Starbucks had no work available for her with those restrictions; she did not mention that Ms. Hedum had missed any scheduled shifts since their last conversation. On August 25, Ms. Hedum came into the store to deliver her latest medical release form to Ms. Hickey. During that meeting, Ms. Hickey informed Ms. Hedum she was being suspended for failing to report to work on August 22. Ms. Hickey filled out another corrective action form, but Ms. Hedum refused to sign it because she disagreed with Ms. Hickey's written statement that Ms. Hedum "knew she was scheduled and never covered her shift or contacted the store." When Ms. Hedum returned to the store on August 29 to give Ms. Hickey her latest medical release, Ms. Hickey informed her she was being fired because of her absences.

### 2. Defendant's Version of Events

According to Starbucks, Ms. Hedum did not inform any of her supervisors that she had

injured her wrist until August 15, when Ms. Hickey gave Ms. Hedum her seventh corrective action notice (her third at the Hillsboro Landing store) for showing up late to her shift.  The notice states it is Ms. Hedum's "final written warning," and that the "next occurrence of being late will be suspension."  After Ms. Hickey gave her the notice, Ms. Hedum informed Ms. Hickey for the first time that she had injured her wrist and that she would be missing the next day's shift in order to see a doctor.  Starbucks contends Ms. Hedum still neglected to tell Ms. Hickey she had hurt her wrist while on the job, however.  It does not address whether Ms. Hedum ever provided a medical release setting forth her restricted work status.

Starbucks next alleges Ms. Hedum failed to show up for a scheduled shift on August 22. When Ms. Hedum came into the store on August 25, Ms. Hickey placed her on suspension pursuant to her "final written warning."  During that conversation, Ms. Hedum informed Ms. Hickey for the first time that her wrist injury occurred on the job three weeks earlier.  In response, Ms. Hickey immediately completed an "incident report form" and faxed it to Starbucks headquarters.  Starbucks later accepted Ms. Hedum's workers' compensation claim, and gave her lost time benefits and medical care reimbursements.  Shortly after her suspension, Ms. Hedum returned to the store to give Ms. Hickey her latest medical release, at which point Ms. Hickey informed her she was being fired because of her absences.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court views the record in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  If the movant initially shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting out "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

(internal quotation marks and citation omitted).

## DISCUSSION

Ms. Hedum brings religious discrimination and retaliation claims under Title VII of the

Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, and

under Oregon Revised Statute ("O.R.S.") § 659A.030.  She also brings a workers' compensation

discrimination claim under O.R.S. § 659A.040 and a common law wrongful discharge claim.  As

discussed below, I find Ms. Hedum has met her burden at the summary judgment stage for each

of these claims.

### A.    Plaintiff's Religious Discrimination Claims

The familiar three-part burden-shifting framework of *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973), applies to both federal discrimination claims brought under Title

VII and to state law discrimination claims litigated in federal court.  *See Snead v. Metro. Prop. &*

*Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001).  This burden-shifting framework requires the

plaintiff first to establish a prima facie case of unlawful discrimination, at which point the

defendant must articulate a legitimate, nondiscriminatory reason for its actions.  *McGinest v.*

*GTE Serv. Corp.*, 360 F.3d 1103, 1122 n.16 (9th Cir. 2004).  If the defendant does so, the

plaintiff must show that the defendant's articulated reason is a pretext for discrimination.  *Id.*

### 1. Plaintiff's Prima Facie Case

To establish a prima facie case of religious discrimination, Ms. Hedum must show that

(1) she is a member of a protected class; (2) she was qualified for her position; (3) she was

subject to an adverse employment action; and (4) *"either* that similarly situated individuals

outside her protected class were treated differently, *or* other circumstances surrounding the

adverse employment action give rise to an inference of discrimination."  *Bodett v. CoxCom, Inc.*,

366 F.3d 736, 743-44 (9th Cir. 2004) (internal quotation marks omitted).  At the summary

judgment stage, "the requisite degree of proof necessary to establish a prima facie case . . . is

minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). There is no dispute that Ms. Hedum's practice of the Wiccan religion places her in a protected class, or that being fired constitutes an adverse employment action. I therefore focus on the second and forth elements of Ms. Hedum's prima facie case.

Ms. Hedum contends her performance met Starbucks's legitimate expectations, as demonstrated by her two performance reviews ranking her as "Satisfactory" or "Above Satisfactory" on all factors other than attendance. Starbucks, on the other hand, argues that Ms. Hedum's corrective action notices and performance reviews demonstrate she was not qualified for her position. Starbucks's argument conflates Ms. Hedum's burden at the first step of the burden-shifting analysis to make out a prima facie case with Starbucks's burden at the second step to proffer a legitimate reason for her termination.

Starbucks points to *Spees v. Willamina School District 30J*, 2004 WL 2370642 (D. Or. Oct. 19, 2004) in support of its argument that an employee who has received disciplinary letters and poor evaluations may be unable to make out a prima facie case of discrimination.[2] In *Spees*,

---

[2] Starbucks also points to *Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1102 (D. Or. 2007) and *Culver v. Qwest Communications Corp.*, 2007 WL 963446 at *8 (D. Or. 2007) as examples of cases where this court has concluded the plaintiffs failed to show they were performing satisfactorily because they had received disciplinary notices, warnings, and other corrective actions. Both cases are easily distinguished from this one.
　　In *Pullom*, the court specifically noted the plaintiff failed to present any evidence or make any argument in her briefing that she performed satisfactorily prior to being laid off. In contrast, Ms. Hedum hotly disputes Starbucks's contention regarding her job performance, and correctly points out that she received an overall "meets expectations" rating on her performance reviews.
　　In *Culver*, the plaintiff was fired from his position as a telephone network technician after falsifying a timesheet while on a written warning of dismissal. The plaintiff's primary argument was that he had not been the one to actually fill out his timesheet, and there was therefore nothing unsatisfactory about his performance. The court found this argument specious because the plaintiff had been the one to give the scrivener the false information about his hours. In addition, the defendant had explicitly warned the plaintiff his job was in serious jeopardy and that any violations during the next twenty-four months could lead to dismissal. In contrast, Ms. Hedum received only two corrective action notices for tardiness during her first eleven months at the Hillsboro Landing store, and the events surrounding her final days are, in Starbucks's own words, "hotly disputed."

the plaintiff, a schoolteacher, had his teaching license suspended because of two incidents where he yelled at and physically accosted students. In addition, his disciplinary file contained several letters from parents requesting that their children not be placed in the plaintiff's classes because of his inappropriate personal comments and physical contact with students. The school's principal knew of no other employee with similar problems staying within appropriate behavioral boundaries, and the school board's superintendent indicated the plaintiff was the only teacher he knew of whose license had been suspended for inappropriate physical and verbal confrontations with students. The superintendent later dismissed the plaintiff because he no longer held a teaching license, and the plaintiff filed claims for sex and age discrimination. The court found the plaintiff failed to make out a prima facie case of age discrimination, both because he was not performing his job satisfactorily, and because there was no direct evidence of discrimination.

In contrast to the defendant in *Spees*, Starbucks fails to put Ms. Hedum's corrective action notices and performance reviews in context. While the barista job description lists punctuality as one of the requirements, Starbucks has not indicated whether many employees frequently receive corrective action notices, nor has it pointed to a rule or even an average number of corrective action notices baristas are permitted to receive before they will be fired. There is no evidence Ms. Hedum's problems with punctuality put her in a class of her own, as with the plaintiff's disciplinary record in *Spees*. And as mentioned above, it is unclear whether Ms. Hickey even knew of Ms. Hedum's attendance record at the Cornelius store. Finally, Ms. Hedum's two performance reviews indicate she was performing satisfactorily or better on all aspects of her job other than her timeliness, and give an overall positive impression of her performance. Given all these factors, Ms. Hedum has met her burden at this stage of demonstrating she was qualified for her position.

Ms. Hedum claims she has also satisfied the fourth element of her prima facie case because the circumstances surrounding her termination give rise to a reasonable inference of discrimination—e.g., she was subjected to repeated comments from Ms. Hickey and Ms. Davies

regarding her religion and religious necklace, while other employees wore Christian cross

jewelry with impunity.[3]  Starbucks contends these incidents are "uncorroborated," and that no

discrimination can be inferred based on these "stray comments" because no employee ever

disparaged Ms. Hedum's religion or even claimed to understand its tenets.

Both arguments fail.  First, the comments do not need to be corroborated at this stage.

Ms. Hedum has sworn to Ms. Hickey's and Ms. Davies's comments in her deposition testimony;

her pleadings and deposition alone create a genuine issue of material fact regarding the content

and frequency of these comments.  In addition, the comments were sufficiently serious and/or

numerous that at some point Ms. Hedum contacted Starbucks's human resources representative to

inquire about her right to wear the necklace, which contributes to an inference of discrimination.

Second, Ms. Hedum has pleaded and testified that the comments regarding her necklace

were repeated and pervasive, not merely "stray."  And Ms. Davies's comment that people might

believe she was a "Satan worshiper" certainly qualifies as "disparaging."  Finally, Starbucks's

_____

[3]Starbucks makes some attempt to analyze the fourth element of Ms. Hedum's prima facie case under that element's first formulation—i.e., it evaluates whether similarly situated individuals outside Ms. Hedum's protected class were treated more favorably.  But neither party has sufficiently articulated whether there are any similarly situated individuals outside Ms. Hedum's protected class.

The gist of Ms. Hedum's complaint is not that she was discriminated against because she is religious per se, but rather that she was discriminated against because of which religion she practices.  *See Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 659 (9th Cir. 1999) (describing a similarly situated employee as one who reports to the same supervisor, is subject to the same standards, and has engaged in the same conduct).  Employees who practice other religions and display tokens of their religious beliefs—as opposed to employees who exhibit no outward signs of adhering to any religious beliefs at all—therefore seem at first like an ideal comparison group.  But Starbucks correctly points out that disciplinary records are relevant to determining whether employees are similarly situated, *Wall v. National Railroad Passenger Corp.*, 718 F.2d 906, 909 (9th Cir. 1983), and claims that its Hillsboro Landing employees who wore Christian cross jewelry did not have Ms. Hedum's attendance record.  Any attempt to compare the treatment Ms. Hedum received to that of employees who wore Christian cross jewelry but who did not have a similar attendance record is therefore inapposite.

Contrary to Starbucks's contention, however, the lack of  similarly situated employees outside of Ms. Hedum's protected class does not mean Ms. Hedum cannot carry her burden on the fourth element of her prima facie case, but rather that Ms. Hedum must make her case under that element's second formulation—i.e., that other circumstances surrounding Ms. Hedum's termination give rise to an inference of discrimination.

argument that people who do not understand one another are incapable of discriminating against one another defies both logic and experience.  While Starbucks disputes the nature and content of Ms. Hickey's and Ms. Davies's comments, I must resolve all factual disputes in Ms. Hedum's favor at this stage, and I find the circumstances surrounding her termination give rise to an inference of discrimination.

Because Ms. Hedum has established at least a question of fact as to the second and fourth elements outlined above, she has satisfied the requirements for making out her prima facie case at this stage.

### 2.  Defendant's Legitimate Nondiscriminatory Reason

Starbucks points to Ms. Hickey's ongoing tardiness, as well as her alleged failure to show up for a shift on August 22, 2005, while on a final written warning, as its legitimate, nondiscriminatory reason for Ms. Hedum's termination.  It has produced her corrective action notices, her performance evaluations, and the transcript of Ms. Hickey's deposition testimony, all of which support this contention, and it has therefore met its burden at this stage.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (explaining that an employer meets this burden if it "simply explains what [it] has done or produces evidence of legitimate nondiscriminatory reasons" (internal quotation marks omitted)).

### 3.  Plaintiff's Evidence of Pretext

A plaintiff can establish pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer."  *Chuang v. Univ. of Ca. Davis Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000) (internal quotation marks omitted).  To survive summary judgment, a plaintiff must only establish that a reasonable fact-finder could conclude that discrimination was the real reason for the defendant's actions.  *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 n.2 (9th Cir. 1996).  Further, if the evidence constituting the plaintiff's prima facie case raises a genuine issue

PAGE 11 - OPINION AND ORDER

of material fact regarding the truth of the employer's proffered reasons, the plaintiff need not introduce any additional evidence of discrimination at the pretext stage. *Chuang*, 225 F.3d at 1127. In either case, the plaintiff may rely on circumstantial evidence, so long as that evidence is "specific" and "substantial" enough to create a triable issue of fact regarding whether the employer intended to discriminate. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998); *but see Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1030-31 (9th Cir. 2006) (discussing whether subsequent cases may have overturned *Godwin's* requirement that a plaintiff's circumstantial evidence of pretext must be "specific" and "substantial," but ultimately not deciding the issue because plaintiff's evidence was sufficient to create a genuine issue of fact regarding defendant's motives under the *Godwin* standard).

In this case, Ms. Hedum's prima facie case already raises a genuine issue of material fact regarding Starbucks's proffered reason for terminating her. As discussed above, the content and frequency of her managers' comments regarding her necklace, the significance of her corrective action notices, and almost all of the events leading up to Ms. Hedum's dismissal are disputed. In addition to the evidence discussed above in conjunction with Ms. Hedum's prima facie case, however, she also relies on the following evidence regarding her attendance record to create an issue of pretext: (1) Ms. Hickey was unaware of the corrective action notices she received at the Cornelius store; and (2) Ms. Hedum was scheduled to work on August 22, 2005, even though she had informed Ms. Hickey she would be unavailable to work that day because of her follow-up medical appointment.

Ms. Hickey testified during her deposition that she could not recall ever consulting Ms. Hedum's personnel file from the Cornelius store; viewing this fact in the light most favorable to Ms. Hedum, I must assume Ms. Hickey was unaware of the four notices Ms. Hedum received in Cornelius, and that Ms. Hedum therefore had only two corrective action notices leading up to the hotly disputed events of August 2005. This contributes to Ms. Hedum's contention that Starbucks's proffered reason for firing her is unworthy of credence.

PAGE 12 - OPINION AND ORDER

Viewing all of the disputed facts in this case in the light most favorable to Ms. Hedum, her second additional piece of evidence also contributes to an inference of discrimination. In Cornelius, where Ms. Hedum does not allege she was subject to any religious discrimination, she received four notices over a three-month period and was put on a strict "action plan," yet was not subject to any further disciplinary action stemming from those notices. In contrast, during her twelve months at Hillsboro Landing, where she alleges she was subject to repeated comments regarding her religion and her religious jewelry, she received only three corrective action notices, she was scheduled to work on a day when she alleges she had informed her manager she would be unavailable, and she was then fired after she missed that shift. Based on the specific and substantial evidence discussed in both this section and in conjunction with Ms. Hedum's prima facie case, there is a genuine issue of material fact regarding the truth of Starbucks's proffered reason for firing her, and a reasonable fact-finder could conclude that Ms. Hedum's attendance record was mere pretext for her termination. *See Cornwell*, 439 F.3d at 1028.

## B. Plaintiff's Retaliation Claims

In addition to her religious discrimination claims, Ms. Hedum also claims she was fired because she resisted Starbucks's discriminatory practices. The *McDonnell Douglas* order and allocation of burdens discussed above for religious discrimination claims also govern actions for retaliatory discharge under Title VII. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). And as with claims of religious discrimination, both federal and state retaliation claims share the same analysis, and should be evaluated together. *Payne v. Apollo Coll.—Portland, Inc.*, 327 F. Supp. 2d 1237, 1245 (D. Or. 2004).

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) she was subject to an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003). As with her religious discrimination claim, Ms. Hedum's prima facie case of retaliation need not be proved by a preponderance of the

PAGE 13 - OPINION AND ORDER

evidence at the summary judgment stage. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986). Starbucks concedes that, for summary judgment purposes, Ms. Hedum satisfies the first prong by claiming she resisted discriminatory comments and practices regarding her religious necklace. And, as discussed above, being fired certainly constitutes an adverse employment action.[4] I therefore focus on whether Ms. Hedum has shown a causal link between these two actions.

The Ninth Circuit has recognized that timing alone can satisfy the causation prong, though it has refused to create a bright line test based on temporal proximity. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *see also Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003) (noting in the First Amendment retaliation context that a bright line test based on temporal proximity would make little sense, as some retaliators may wait until the victim is especially vulnerable or until the lapse of time will help disguise their true motivation). It has also held that other circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities, can contribute to the plaintiff's prima facie case. *Miller*, 797 F.2d at 731-32.

Here, Ms. Hedum establishes the causation element of her prima facie case by pleading and testifying that (1) she wore her necklace beginning at least several months into her employment at Hillsboro Landing and continuing until her termination; (2) she resisted the repeated discriminatory comments and requests to remove or tuck in her necklace, both by involving the human resources department in her dispute and by continuing to wear her necklace throughout her employment; (3) she was terminated during the course of resisting the ongoing discriminatory treatment; and (4) Ms. Hickey, the manager chiefly responsible for the derogatory

---

[4] Ms. Hedum also claims Starbucks retaliated against her by refusing to promote or transfer her, by reducing her hours, and by scrutinizing her "minor tardiness" more closely than that of other employees. Because I find that Ms. Hedum's termination is sufficient to meet her burden on the second element of her prima facie case, I do not address these other alleged forms of retaliation.

PAGE 14 - OPINION AND ORDER

comments and treatment, was not only aware of Ms. Hedum's protected activity, but was the same manager responsible for suspending Ms. Hedum for failing to show up for a shift she allegedly knew nothing about, and for then firing her soon afterwards. These factors suffice to raise an issue of causation.

Following the rest of the *McDonnell Douglas* burden-shifting analysis, as discussed above, Starbucks offers a legitimate, nondiscriminatory reason for the termination, but Ms. Hedum creates an issue of pretext sufficient to defeat summary judgment.

### C. Plaintiff's Wrongful Discharge Claim

Ms. Hedum also makes a common law wrongful discharge claim. Such claims are designed to deter conduct that is contrary to public policy, and in order to state a claim, a plaintiff must show that she was terminated for "fulfilling a societal obligation" or for "pursuing a right related to [her] role as an employee" where that right is "one of important public interest." *Delaney v. Taco Time Internat'l, Inc.*, 681 P.2d 114, 117-18 (Or. 1984). Here, Ms. Hedum's claim is based on her resistance to Starbucks's allegedly discriminatory practices.

As with Ms. Hedum's other claims, federal courts apply the three-part *McDonnell Douglas* burden-shifting analysis to Oregon wrongful discharge claims. *See Williams v. Fed. Express Corp.*, 211 F. Supp. 2d 1257, 1265-66 (D. Or. 2002). As discussed above, Ms. Hedum has made out a prima facie case that she was fired in retaliation for her resistance to religious discrimination, and has also offered sufficient evidence at this stage to demonstrate that her attendance record was mere pretext for her termination.

Starbucks contends it is unclear whether Ms. Hedum's claim for wrongful discharge is also based on her claim for workers' compensation. I disagree, and find that her Complaint clearly links her wrongful discharge claim only to her claims of religious discrimination and retaliation. Starbucks's argument that a claim for wrongful discharge is preempted by a statutory workers' compensation claim, while correct, is therefore moot. *Messer v. Portland Adventist Med. Ctr.*, 707 F. Supp. 449, 453-54 (D. Or. 1989).

PAGE 15 - OPINION AND ORDER

### D.  Plaintiff's Workers' Compensation Discrimination Claim

Finally, Ms. Hedum also claims she was fired in part because she invoked the workers' compensation system after she injured her wrist on the job.  The *McDonnell Douglas* order and allocation of burdens discussed above govern this claim as well.  *Hardie v. Legacy Health Sys.*, 6 P.3d 531, 536 (Or. 2000), *partially superseded by statute on other grounds*, Or. Admin. R. 839-006-0205(6)(b)*, as recognized in Lansford v. Georgetown Manor, Inc.*, 84 P.3d 1105 (Or. App. 2004).  To establish a prima facie case of workers' compensation retaliation, a plaintiff must show (1) that she invoked the workers' compensation system; (2) that she was discriminated against in the terms of her employment; and (3) that she was discriminated against because she invoked the workers' compensation system.  *Id.*  Starbucks disputes only the third element.

Even more so than with Ms. Hedum's claim of retaliation, the timing alone creates an issue of fact on the possible causal connection between Ms. Hedum's protected activity (invoking the workers' compensation system) and Starbucks's adverse employment action (terminating her). In its Motion for Summary Judgment on this claim, Starbucks claims only that Ms. Hedum "was in control of the timing" and "did not report that her injury was work-related until the meeting to suspend her."  This directly contradicts Ms. Hedum's pleadings and deposition testimony.  Ms. Hedum claims she immediately informed Ms. Muff and Ms. Hickey of her injury on August 4 and 5, that Ms. Hickey acted displeased when Ms. Hedum indicated she intended to seek workers' compensation for her injury, and that Ms. Hickey refused to provide her with the necessary paperwork.  As discussed above, Ms. Hedum further claims that she was scheduled for a shift on August 22, even though she had informed Ms. Hickey she had another medical appointment scheduled that day and would be unable to work that day or any day before it.  Ms. Hedum further testified she refused to sign the corrective action notice Ms. Hickey gave her during their August 25 meeting because she disagreed with Ms. Hickey's written statement that Ms. Hedum had known she was scheduled on August 22 and failed to cover her shift.  Taken in the light most favorable to Ms. Hedum, this evidence provides a sufficient inference of workers'

PAGE 16 - OPINION AND ORDER

compensation discrimination to survive Starbucks's Motion for Summary Judgment.

### E.  Plaintiff's Request for Punitive Damages

In addition to its motion for summary judgment on the merits of each claim, Starbucks separately moves against Ms. Hedum's claims for punitive damages.  Ms. Hedum asks for punitive damages, as available, on each of her claims, and Starbucks moves for summary judgment on that request.  Under Title VII, a plaintiff may recover punitive damages when her employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of the aggrieved individual."  42 U.S.C. § 1981a(b)(1).  The Supreme Court has interpreted this to mean an employer must "discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 536 (1999).  While the Court held that intentional discrimination is not necessarily sufficient to meet this standard, it rejected a requirement that the employer's conduct be "egregious."  *Id.* at 537-38.  Similarly, the Oregon statute governing awards of punitive damages requires that the defendant "acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm."  Or. Rev. Stat. § 31.730(1).  The Oregon Supreme Court has clarified that "malice" means "nothing more than a wrongful act done intentionally without just cause or excuse."  *Friendship Auto Sales, Inc. v. Bank of Willamette Valley*, 716 P.2d 715, 722 (1986) (internal citation and quotation marks omitted).

Starbucks argues that, even accepting Ms. Hedum's version of the facts, she was never subject to any "malicious or even overtly objectionable conduct" during her employment, and that her history of attendance problems more than justifies her termination.  As discussed above, however, material questions of fact remain about the nature and frequency of Ms. Hickey's and Ms. Davies's comments, and about the events leading up to Ms. Hedum's termination.  Starbucks's arguments hinge on the fact-finder accepting its version of the facts.  If the fact-finder instead accepted Ms. Hedum's version of the facts, it could find that Starbucks acted with a

reckless indifference to her rights, and I therefore deny its request for summary judgment on Ms.

Hedum's claims for punitive damages.

## CONCLUSION

Based on the foregoing, Starbucks's Motion for Summary Judgment (#14) is DENIED.

IT IS SO ORDERED.

DATED this __7th__ day of February, 2008.


                              /s/ Michael W. Mosman
                              MICHAEL W. MOSMAN
                              United States District Court

PAGE 18 - OPINION AND ORDER